UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MARIO FRANCO,

                      Plaintiff,

            v.                      5:16-CV-634
                                               (FJS/TWD)

CITY OF SYRACUSE,
POLICE OFFICER JOHN GUNSALUS,
POLICE OFFICER SHAWN KELLY, and
UNIDENTIFIED SYRACUSE POLICE OFFICERS,

                      Defendants.
_____

**APPEARANCES**                                             **OF COUNSEL**

**THE LAW OFFICE OF**                      FRED B. LICHTMACHER, ESQ.
**FRED LICHTMACHER P.C.**
116 West 23rd Street, Suite 500
New York, New York 10011
Attorney for Plaintiff

**CITY OF SYRACUSE**                      CHRISTINA F. DEJOSEPH, ESQ.
**CORPORATION COUNSEL**         TODD M. LONG, ESQ.
City of Syracuse Corporation Counsel
233 East Washington Street
Room 300 City Hall
Syracuse, New York 13202
Attorneys for Defendants

**SCULLIN, Senior Judge**

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Mario Franco ("Plaintiff") commenced this action against, among others, the City of Syracuse ("Defendant City of Syracuse"), Police Officer John Gunsalus ("Defendant Gunsalus"), and Police Officer Shawn Kelly ("Defendant Kelly") (hereinafter collectively referred to as "Defendants") seeking declaratory relief, compensatory damages, punitive damages, costs and disbursements, and attorney's fees for alleged violations of his civil rights. *See generally* Dkt. No. 50, Amended Complaint. Defendants have moved for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See generally* Dkt. No. 80.

## II. BACKGROUND

At approximately 11:30 p.m. on July 4, 2014, Plaintiff drove to a party on Victoria Place in Syracuse, New York. Plaintiff learned about the "college party" from his friends, who traveled to the party separately and discovered upon arrival that police officers were clearing people out of the house. There were at least seventy people congregated outside; and, as people were leaving, an altercation started. Due to the situation, Plaintiff's friends drove past the party and parked the vehicle away from the location.

Throughout this time, one of Plaintiff's friends, Elijah Johnson, was on the phone with Plaintiff describing the events. Mr. Johnson advised Plaintiff not to come to the party because the police were there but Plaintiff drove to the location anyway. When Plaintiff arrived, there were at least two marked police vehicles at the house. Plaintiff saw his friends' parked car on the opposite end of the street and began walking towards them. When Plaintiff arrived at his friends' car, he leaned his head inside the driver's side window to talk with the occupants.

According to Defendants, at this time, Defendant Gunsalus was 15-20 feet from Plaintiff and gave him a verbal command to disperse. Defendants assert that Defendant Gunsalus repeated this verbal command as he approached but Plaintiff disregarded it. Defendant Gunsalus claims that he then approached Plaintiff from his right, tapped him on the shoulder and advised him in a clear voice that he was under arrest. Defendant Gunsalus asserts that Plaintiff did not comply with his verbal commands to put his hands behind his back and attempted to flee. Defendant Gunsalus also claims that Plaintiff became aggressive toward him and physically challenged him. Defendant Kelly claims that he witnessed the situation and came to Defendant Gunsalus' aid because he feared for the safety of all individuals involved. According to Defendants, although Plaintiff was resisting arrest aggressively, neither Defendant Gunsalus nor Defendant Kelly used force other than that necessary to handcuff Plaintiff. Defendant Gunsalus also asserts that he eventually handcuffed Plaintiff without any assistance. Lastly, Defendants claim that Plaintiff never advised the officers that he was missing an earring or that he had any injuries other than headaches and minor scrapes from the incident.

Not surprisingly, Plaintiff's version of what occurred differs from Defendants'. According to Plaintiff, Defendant Gunsalus made no announcement for everyone to disperse, nor did he give any order as he approached him from his right side. Plaintiff asserts that Defendant Gunsalus instantly grabbed him by the shoulders, aggressively turned him around, pinned him against the car, cursed at him, hurled racial slurs at him, punched him in his face knocking him to the ground, and continued to strike him repeatedly. According to Plaintiff, he did not put his hands on the officers at any time. Plaintiff states that both Defendant Gunsalus and Defendant Kelly were violent with him even though he did not resist arrest. Plaintiff claims that, due to Defendants' unprovoked violence towards him, he had injuries to his face, stomach, and ribs and

also suffered headaches.  Finally, Plaintiff asserts that he was missing one of his earrings and another was damaged as a result of the incident.

On July 4, 2014, Plaintiff was charged with and prosecuted for disorderly conduct, resisting arrest, and harassment.  Plaintiff was ultimately acquitted of all charges at trial during the week of June 15, 2015.

Based on these allegations, Plaintiff asserts the following seven causes of action[1]:

(1) Excessive force against the individual defendants pursuant to 42 U.S.C. § 1983[2];

(2) Failure to intervene against the individual defendants pursuant to 42 U.S.C. § 1983;

(3) False arrest against the individual defendants pursuant to 42 U.S.C. § 1983;

(4) Malicious prosecution against the individual defendants pursuant to 42 U.S.C. § 1983;

(5) Denial of the right to a fair trial against the individual defendants pursuant to 42 U.S.C. § 1983;

(6) Illegal seizure of his property against the individual defendants pursuant to 42 U.S.C. § 1983; and

(7) Municipal liability pursuant to *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), against Defendant City of Syracuse.[3]

---

[1] The parties stipulated to the dismissal of the claims against Police Officers William Lashomb and Joseph Mauro; and the Court "so ordered" that stipulation on October 2, 2017.  *See generally* Dkt. Nos. 68-69.  Accordingly, "the individual defendants" refers only to Defendant Gunsalus and Defendant Kelly.  Furthermore, despite the completion of discovery, Plaintiff has failed to identify the "Unidentified Syracuse Police Officers"; therefore, the Court dismisses Plaintiff's claims against the Unidentified Syracuse Police Officers *sua sponte*.

[2] Defendants did not move for summary judgment with regard to Plaintiff's excessive force claims against Defendants Gunsalus and Kelly.

[3] In response to Defendants' motion, Plaintiff voluntarily dismissed his illegal seizure of his property claim against Defendants Gunsalus and Kelly and his *Monell* claim against Defendant City of Syracuse.  *See* Dkt. No. 83, Plaintiff's Memorandum of Law in Opposition to

# III. DISCUSSION

**A. Legal standards governing a motion for summary judgment**

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Under this Rule, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all reasonable inferences, in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

**B. 42 U.S.C. § 1983**

Pursuant to 42 U.S.C. § 1983,

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

---

Defendants' Motion for Partial Summary Judgment, at 4, 13. Accordingly, the Court grants Defendants' motion for partial summary judgment with regard to these causes of action.

committed by a person acting under color of state law."[4]  *West v. Atkins*, 487 U.S. 42, 48  (1988) (citations omitted).

C. **Defendants' motion for partial summary judgment**

   *1. Failure to intervene in the use of excessive force and Plaintiff's false arrest against Defendant Kelly[5] pursuant to 42 U.S.C. § 1983*

"'It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.'" *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).  "An officer who fails to intercede is liable for the preventable harm caused by the actions of other officers where he or she observes or has reason to know that those other officers are violating a person's constitutional rights by using excessive force or making an unjustifiable arrest." *Chepilko v. City of New York,* No. 06-CV-5491 (ARR) (LB), 2012 WL 398700, *8 (E.D.N.Y. Feb. 6, 2012) (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).  "Liability may attach only when, (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v.*

---

[4] Plaintiff has alleged that Defendants Gunsalus and Kelly were acting under color of state law, and Defendants do not challenge this assertion.

[5] Plaintiff concedes that Defendant Gunsalus was the arresting officer and a direct participant in the alleged constitutional violations and, therefore, withdraws his failure to intervene claims against Defendant Gunsalus.  *See* Dkt. No. 83, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment, at 6.  Plaintiff also withdraws his failure to intervene claims as to his malicious prosecution and denial of the right to a fair trial because Defendant Kelly is a direct participant in those claims.  *See id.* at 7.  Accordingly, the Court grants Defendants' motion with regard to these claims.

*Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing [*O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)]) (other citation omitted).

### *a. Direct participant theory regarding excessive force*

Defendants argue that Defendant Kelly cannot be held liable for failing to intervene to prevent the alleged unauthorized use of force because Plaintiff asserts liability under a theory of direct participation. According to Defendants, Plaintiff alleges that Defendant Kelly struck him five to six times in the ribs and, therefore, cannot be held liable for failing to intervene because he was a direct participant in the alleged excessive force.

The Court disagrees. As Plaintiff asserts, he may hold Detective Kelly liable for one cause of action or the other. *See Buchy v. City of White Plains,* No. 14 CV 1806, 2015 WL 8207492, *3 (S.D.N.Y. Dec 7, 2015). "The Federal Rules of Civil Procedure recognize claims may be brought in the alternative, even if they are inconsistent." *Id.* (citing Fed. R. Civ. P. 8(d)(2), (3)). Moreover, district courts have allowed excessive force and failure to intervene claims to proceed in the alternative beyond the summary judgment stage. *See id.* (citing *Cumberbatch v. Port Auth. of N.Y. and N.J.,* 2006 WL 3543670, at *11 (S.D.N.Y. Dec. 5, 2006) ("The Court will thus construe these claims as pleading in the alternative . . . *i.e.*, the Officers either used excessive force, or one or both of them failed to intervene while another officer used excessive force.").

### *b. Reasonable opportunity to intervene in the alleged excessive force*

In the alternative, Defendants argue that Defendant Kelly had no reasonable opportunity to intervene to prevent the alleged unauthorized use of force because the incident took place too

quickly. According to Defendants, Plaintiff's interaction with Defendant Gunsalus lasted approximately 5-10 seconds before the two men went down to the ground. Defendants argue that this interaction was too brief for a reasonable jury to conclude that Defendant Kelly had a genuine opportunity to intercede.

Although it appears from the submissions to the Court that Plaintiff's interaction with Defendant Gunsalus prior to going to the ground was very brief, when viewing the facts in the light most favorable to Plaintiff, there is a genuine dispute of material fact with regard to whether or not Defendant Kelly had a reasonable opportunity to intercede during the time that the alleged excessive force was used while Plaintiff was on the ground. In his Amended Complaint, Plaintiff alleges that, "[w]hile [he] was being beaten, . . . [Defendant] Kelly . . . did nothing to stop him from being abused, although [he] had a reasonable opportunity to do so." *See* Amended Complaint at ¶ 15. Plaintiff also points to multiple witnesses who stated that he was struck in the ribs five to six times or possibly more and that the hitting "lasted around a minute, or a couple of minutes." *See* Dkt. No. 84, Plaintiff's Response to Defendants' Statement of Material Facts Not in Dispute, at ¶¶ 34, 39, 42. "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994) (citation omitted). There is a factual dispute regarding the amount of time Plaintiff was on the ground and who allegedly used excessive force against him during that time. Accordingly, the Court denies Defendants' motion with regard to Plaintiff's claim that Defendant Kelly failed to intervene during the time that Defendant Gunsalus was allegedly using excessive force against Plaintiff.

### *c. Failure to intervene in the alleged false arrest*

Lastly, Defendants assert that, in his Amended Complaint Plaintiff's failure to intervene claim was predicated solely upon the alleged use of excessive force but that he now asserts for the first time in his response that Defendant Kelly could be found liable for failing to intervene to prevent Plaintiff's false arrest. Defendants argue that a summary judgment motion is not the appropriate place to assert a new claim and that, therefore, the Court should not consider this argument.

As Defendants correctly note, Plaintiff did not allege in his amended complaint that Defendant Kelly failed to intervene to prevent his allegedly false arrest, s*ee* Amended Complaint at ¶¶ 30-34; and he cannot raise this claim for the first time in response to Defendants' motion. *See Greenidge v. Allstate Ins. Co.,* 446 F.3d 356, 361 (2d Cir. 2006) (stating that the Second Circuit has held that "plaintiffs who failed to include a claim in their complaint can move to amend the complaint; if summary judgment has been granted to their opponents, they can raise the issue in a motion for reconsideration" (citing *Mauro v. S. New England Telcomms., Inc.,* 208 F.3d 384, 386 n.1 (2d Cir 2000))) "[T]he central purpose of a complaint is to provide the defendant with notice of the claims asserted against it[.]" *Id.* (citing Fed. R. Civ. P. 8(a)). Accordingly, the Court grants Defendants' motion for partial summary judgment with regard to Plaintiff's newly raised claim that Defendant Kelly failed to intervene to prevent his allegedly false arrest.

### *2. False arrest claims against Defendant Gunsalus and Defendant Kelly pursuant to 42 U.S.C. § 1983*

A claim for false arrest under 42 U.S.C. § 1983 "derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from

arrest absent probable cause." *Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir. 2006) (citation omitted). "In analyzing Section 1983 claims for false arrest, federal courts 'generally look to the law of the state in which the arrest occurred.'" *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 600 (E.D.N.Y. 2017) (quoting *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006))).

In order to succeed on a false arrest claim under New York law, a plaintiff must establish that "'(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)); *see also Carpenter v. City of New York*, 984 F. Supp. 2d 255, 264 (S.D.N.Y. 2013) (stating that, "[u]nder New York state law, a claim of false arrest requires a showing that the confinement was not privileged" (citation omitted)). "The existence of probable cause for an arrest 'is a complete defense to an action for false arrest.'" *Frederique v. Cnty. of Nassau,* 168 F. Supp. 3d 455, 476 (E.D.N.Y. 2016) (quoting *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994)) (other citation omitted).

Defendants argue that it is undisputed that Defendant Gunsalus provided verbal commands to disperse prior to approaching Plaintiff and that Plaintiff disobeyed said commands by continuing to stand in the street conversing with his friends. Defendants also contend that, even if Plaintiff did not hear Defendant Gunsalus' commands, Defendant Gunsalus had no way of knowing that, and Plaintiff's failure to comply with his lawful and repeated verbal commands to disperse created probable cause to arrest him for disorderly conduct.

To the contrary, Plaintiff asserts that, when viewing the facts alleged in the Amended Complaint in the light most favorable to him, there is a genuine dispute as to whether Defendant Gunsalus gave verbal commands to disperse prior to his arresting Plaintiff and that, therefore, a genuine dispute as to whether there was probable cause for that arrest.

According to his submissions, multiple witnesses confirmed Plaintiff's allegations that there were no such verbal commands before the officers attempted to arrest him and, therefore, a genuine dispute exists as to whether there was probable cause to arrest Plaintiff. Accordingly, the Court denies Defendants' motion for partial summary judgment regarding Plaintiff's false arrest claims against Defendant Gunsalus and Defendant Kelly.

### *3. Malicious prosecution claims against Defendant Gunsalus and Defendant Kelly pursuant 42 U.S.C. § 1983*

In order to state a sufficient claim for malicious prosecution pursuant to 42 U.S.C. § 1983, "a plaintiff must allege facts plausibly suggesting the following four elements: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for defendant's actions." *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 294 (N.D.N.Y. 2018) (citing *Ying Li v. City of New York,* F. Supp. 3d 578, 604 (E.D.N.Y. 2017) (citing *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010))). Moreover, the plaintiff must also allege that a Fourth Amendment right was violated resulting in "'a sufficient post-arraignment deprivation[] of liberty.'" *Ying Li*, 246 F. Supp. 3d at 604-05 (quoting *Singer*, 63 F.3d at 117) (other citation and footnote omitted).

In this case, Defendants do not dispute that the criminal proceeding terminated in Plaintiff's favor. Additionally, The Court has already addressed Defendants' argument regarding the existence of probable cause. Therefore, the Court will not address these elements here.

### *a. Initiation of a criminal proceeding*

"'To initiate or continue a criminal proceeding, "a defendant must do more than report the crime or give testimony. He must play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."'" *Thomas,* 293 F. Supp. 3d at 294 (quoting *Ying Li*, 246 F. Supp. 3d at 605 (quoting *Manganiello*, 612 F.3d at 163))). "An active role in the prosecution is inferred when a defendant . . . filled out a complaining and corroborating affidavit[.]" *Ying Li,* 246 F. Supp. 3d at 605 (citing *Cameron v. City of New York,* 598 F.3d 50, 63 (2d Cir. 2010) (noting that a police officer can initiate prosecution by filing charges or other accusatory instruments); *Costello v. Milano,* 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014)).

Defendants argue that the record is devoid of proof that Defendant Kelly initiated a criminal proceeding against Plaintiff other than by assisting in the arrest. Moreover, Defendants assert that there is no evidence that Defendant Kelly swore to a criminal complaint or other accusatory instrument formally initiating prosecution as required to state a malicious prosecution claim.

However, at his deposition, Defendant Gunsalus testified that Defendant Kelly completed a supplemental report for Plaintiff's alleged crimes, "called a 19," which was submitted to the District Attorney. Defendant Gunsalus also testified that Defendant Kelly met with the prosecuting attorney regarding Plaintiff's trial. When viewing the facts in the light most

favorable to Plaintiff, the Court finds that there is a material factual dispute as to whether Defendant Kelly initiated a criminal proceeding.

### *b. Actual malice*

Defendants argue that the record lacks any proof of malice. Defendants assert that probable cause existed to arrest Plaintiff; but that, even if there was a lack of probable cause, Plaintiff has failed to plead specific factual grounds regarding malice other than his conclusory allegations.

As stated above, Plaintiff asserts in his Amended Complaint that neither Defendant Gunsalus nor Defendant Kelly gave verbal commands to disperse and instantly arrested Plaintiff. Multiple witnesses corroborated these allegations. Accordingly, the Court finds that there is a material factual dispute as to whether probable cause existed and "'[a] lack of probable cause generally creates an inference of malice.'" *Ying Li,* 246 F. Supp. 3d at 614 (quoting *Manganiello*, 612 F.3d at 163); (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) ("In most cases, the lack of probable cause - while not dispositive – 'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'" (quotation omitted))).

Moreover, Plaintiff asserts that, although he did not resist arrest or touch Defendants Gunsalus and Kelly, they violently beat him. "'[M]alice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff.'" *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (quotation and other citation omitted)*; see also TADCO Constr. Corp. v. Dormitory Auth. of State of New York*, 700 F. Supp. 2d 253, 271 (E.D.N.Y. 2010) (stating that "[a]ctual

malice requires pleading facts that show the defendant 'commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served'" (quotation omitted)). When viewing the facts in the light most favorable to Plaintiff, the Court finds that there is an issue of fact as to whether Defendants Gunsalus and Kelly undertook the criminal proceedings unlawfully and with wrongful motives.

### *c. Post-arraignment deprivation of liberty*

Lastly, Defendants argue that Plaintiff was released on his own recognizance within hours of his arrest and, therefore, has failed to demonstrate a post-arraignment deprivation of liberty. Defendants assert that, aside from the bare assertion that he was "forced to appear in Court numerous times over slightly less than a year," there is no specific information as to the number of appearances or whether there were any court-imposed restrictions on his liberty.

The Court disagrees. A defendant released pretrial has still suffered a post-arraignment deprivation of liberty. *See Murphy v. Lynn,* 118 F.3d 938, 946 (2d Cir. 1997) (citing *Albright v. Oliver*, 510 U.S. 266, 114 S. Ct. 807 (1994)). A defendant released pretrial "is scarcely at liberty; he remains apprehended, arrested in his movements, indeed 'seized' for trial, so long as he is bound to appear in court and answer the state's charges." *Id.* (quotation omitted). Accordingly, the Court denies Defendants' motion for partial summary judgment with regard to Plaintiff's malicious prosecution claims against Defendant Gunsalus and Defendant Kelly.

### *4. Denial of the right to a fair trial claims against Defendant Gunsalus and Defendant Kelly pursuant to 42 U.S.C. § 1983*

"The claim of denial of the right to a fair trial due to fabricated evidence stems from the Sixth Amendment and the Due Process clauses of the Fifth, Sixth, [and] Fourteenth Amendments

of the U.S. Constitution." *Ying Li,* 246 F. Supp. 3d at 627 (citing *Holbrook v. Flynn*, 475 U.S. 560, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986)) (other citation omitted); *see also Jeanty v. City of Utica*, No. 16-CV-0966, 2017 WL 6408878, *3 (N.D.N.Y. Aug. 18, 2017) (Sannes, J.) (finding that denial of the right to a fair trial through the creation of fabricated evidence forwarded to the prosecutor is properly a claim for denial of procedural due process). "Fabrication of evidence constitutes a violation of the right to a fair trial." *Thomas,* 293 F. Supp. 3d at 295 (citation omitted). "[T]here is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity, at least where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty." *Zahrey v. Coffey,* 221 F.3d 342, 344 (2d Cir. 2000).

"To state a claim of fabrication of evidence, a plaintiff must allege that 'an (1) investigating official (2) fabricat[ed] information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result.'" *Ying Li,* 246 F. Supp. 3d at 628 (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 280 (2d Cir. 2016)). "Probable cause is not a defense to a fabrication-of-evidence claim." *Tanner v. Humphries*, No. 6:16-CV-1131 (GTS/TWD), 2019 WL 981863, *17 (N.D.N.Y. Jan. 3, 2019) (Suddaby, C.J.) (citing *Jovanovic*, 486 F. App'x at 152).

"'The Fourteenth Amendment does not protect against all deprivations of liberty[;] [i]t protects only against deprivations of liberty accomplished "without due process of law."'" *Id.* at *19 (quoting *Baker v. McCollan*, 443 U.S. 137, 145 (1970)); (citing *Threat v. Russi*, 784 F. Supp. 65, 68 (W.D.N.Y. 1992) ("Thus, the plaintiff would only suffer a constitutional violation of his fourteenth amendment rights if he did not receive adequate procedural protection upon

being accused, falsely or not, of wrongdoing.")). Furthermore, "courts have recognized that a plaintiff 'need not have been convicted or suffer a post-conviction deprivation of liberty in order to state a valid § 1983 claim; fabrication of evidence leading to pre-trial detention can satisfy the causation element of a fair trial claim.'" *Id.* (quoting *Long*, 2016 WL 4203545, at *5 (finding that an overnight detention pending arraignment due to the allegedly false information, arrest report, and criminal complaint satisfied the requirement that there be a deprivation of liberty)).

In this case, Plaintiff was detained until after his arraignment, at which time he was released on his own recognizance. However, Plaintiff has not shown that he lacked an adequate post-deprivation remedy. "[T]he Second Circuit has stated that, '[w]hen the state conduct is random and unauthorized, the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy.'" *Tanner*, 2019 WL 981863, at *19 (quoting *Rivera-Powell v. New York City Bd. of Elecs.*, 470 F.3d 458, 465 (2d Cir. 2006)); (citing *Zinermon v. Burch*, 494 U.S. 113, 132 (1990) (noting that, "[i]n situations . . . where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process")). Furthermore, as the court noted in *Tanner*, "[a]t least one court has found that an officer's decision to arrest a plaintiff 'without probable cause and fabricate evidence against him is the archetype of "random and unauthorized intentional conduct."'" *Id.* (quoting *Maldonado v. City of New York*, 11-CV-3514, 2014 WL 787814, at *11 (S.D.N.Y. Feb. 26, 2014)); (citing *Salem v. City of New York*, 17-CV-4799, 2018 WL 3650132, at *6 (S.D.N.Y. Aug. 1, 2018) (finding that failure of corrections officers to adhere to official guidelines was a random and unauthorized act)).

Applying these principles to this case, the Court finds that Plaintiff's allegations that Defendant Gunsalus and Kelly falsified evidence falls into the category of a random and

unauthorized action and that, therefore, Plaintiff must show that he lacked a meaningful post-deprivation remedy. This he clearly cannot do because, as the court in *Tanner* explained, "courts have held that the ability to sue for tort claims such as false arrest and malicious prosecution under [42] U.S.C. §1983 provide such remedy." *Tanner*, 2019 WL 981863, at *19 (citing *Moldonado*, 2014 WL 787814, at *11; *Malik v. City of New York*, 11-CV-6062, 2012 WL 3345317, at *11 (S.D.N.Y. Aug. 15, 2012), *adopted*, 2012 WL 4475156 (Sept. 28, 2012) (finding that "New York provides such an adequate post-deprivation remedy in the form of state law causes of action for negligence . . ." related to destruction of property by a state employee)). Since, in this case, Plaintiff has relied, at least in part, on the alleged falsifications as a basis for his false arrest and malicious prosecution claims, the Court finds that his "ability to pursue such claims provides an adequate post-deprivation remedy for any deprivation of liberty" that he may have suffered, *see Tanner*, 2019 WL 981863, at *19, and, therefore, grants Defendants' motion for partial summary judgment with regard to Plaintiff's denial of his right to a fair trial claims against Defendants Gunsalus and Kelly.

### 5. *Qualified immunity defense with regard to Plaintiff's false arrest and malicious prosecution claims against Defendant Gunsalus and Defendant Kelly*

"Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith,* 781

F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow*, 457 U.S. at 818, 102 S. Ct. at 2738) (other citation omitted). "As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) 'whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation'; and (2) 'whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted.'" *Thomas,* 293 F. Supp. 3d at 300 (quoting *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004)) (other citation omitted).

Moreover, "[e]ven when probable cause for arrest did not exist, an officer is entitled to qualified immunity if he can show that there was 'arguable probable cause' for the arrest." *Crenshaw v. City of Mount Vernon*, 372 F. App'x 202, 205 (2d Cir. 2010) (summary order). "'Arguable probable cause . . . exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law.'" *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (internal quotation marks omitted) (emphasis in original)). When determining whether arguable probable cause existed, courts must determine whether "'(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Golino*, 950 F.2d at 870) (other citations omitted).

In their motion for partial summary judgment, Defendants argue that, if the Court finds that probable cause did not exist to arrest Plaintiff, Defendants Gunsalus and Kelly are still entitled to qualified immunity based on a theory of "arguable probable cause." As discussed above, Plaintiff has sufficiently stated a claim for false arrest and malicious prosecution pursuant to 42 U.S.C. § 1983 against Defendant Gunsalus and Defendant Kelly. Furthermore, when

viewing the facts in the light most favorable to Plaintiff, the Court finds that he has sufficiently alleged facts creating a genuine dispute as to whether Defendant Gunsalus gave verbal commands and, therefore, lacked probable cause. If Defendant Gunsalus failed to make verbal commands to disperse and Defendant Kelly was aware of this, it would be objectively unreasonable for either of them to believe probable cause existed. Plaintiff has "the right to be free from arrest without probable cause" and it would not be reasonable for a police officer to arrest someone without probable cause. *Schwartz v. Marcantonatos,* 567 F. App'x 20, 22-23 (2d Cir. 2014) (summary order). Accordingly, the Court denies Defendants' motion for partial summary judgment based on the defense of qualified immunity.

### IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that all of Plaintiff's claims against the "unidentified officers" are **DISMISSED** *sua sponte*; and the Court further

**ORDERS** that Defendants' motion for partial summary judgment regarding all of Plaintiff's failure to intervene claims against Defendant Gunsalus and his failure to intervene claims regarding malicious prosecution, false arrest, and denial of his right to a fair trial against Defendant Kelly, *see* Dkt. No. 80, is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion for partial summary judgment with regard to Plaintiff's illegal seizure of his property claims against Defendants Gunsalus and Kelly, *see* Dkt. No. 80, is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion for partial summary judgment with regard to Plaintiff's municipal liability claim against Defendant City of Syracuse, *see* Dkt. No. 80, is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion for partial summary judgment with regard to Plaintiff's claims of a denial of his right to a fair trial against Defendants Gunsalus and Kelly, *see* Dkt. No. 80, is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion for partial summary judgment with regard to Plaintiff's failure to intervene in the use of excessive force claim against Defendant Kelly, *see* Dkt. No. 80, is **DENIED**; and the Court further

**ORDERS** that Defendants' motion for partial summary judgment with regard to Plaintiff's claims of false arrest and malicious prosecution against Defendants Gunsalus and Kelly, *see* Dkt. No. 80, is **DENIED**; and the Court further

**ORDERS** that Defendants' motion for partial summary judgment based on the defense of qualified immunity *see* Dkt. No. 80, is **DENIED**; and the Court further

**ORDERS** that the trial of the remaining claims in this action shall commence at **10:00 a.m.** on **July 8, 2019,** in **Syracuse, New York**.[6]

**IT IS SO ORDERED.**

Dated: March 28, 2019
      Syracuse, New York

*(signature)*
Frederick J. Scullin, Jr.
Senior United States District Judge

---

[6] The following claims remain for trial: (1) excessive force against Defendant Gunsalus and Defendant Kelly; (2) failure to intervene in the use of excessive force against Defendant Kelly; (3) false arrest against Defendant Gunsalus and Defendant Kelly; and (4) malicious prosecution against Defendant Gunsalus and Defendant Kelly.